```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
WESTERN EXPRESS BANCSHARES, LLC,        :    19cv4465 (DLC)
                                        :
                    Plaintiff,          :    OPINION AND ORDER
                                        :
            -v-                         :
                                        :
GREEN DOT CORPORATION,                  :
                    Defendant.          :
                                        :
----------------------------------------X
```

APPEARANCES:

For plaintiff:
Andrew Sol Langsam
Pryor Cashman LLP
7 Times Square
New York, NY 10036
(212) 421-4100

For defendant:
Adam R. Brausa
Andrew L. Perito
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666

DENISE COTE, District Judge:

On July 22, 2019, defendant Green Dot Corporation ("Green Dot") moved to dismiss this patent infringement action on the grounds that the complaint fails to plead facts sufficient to state a plausible claim of infringement and that the patent claims patent-ineligible subject matter. See 35 U.S.C. § 101

("Section 101"). For the reasons that follow, the defendant's motion to dismiss is granted.

## BACKGROUND

On May 16, 2019, plaintiff Western Express Bancshares, LLC ("Western Express") brought suit against Green Dot alleging that Green Dot has committed direct, contributory, and induced patent infringement in the sale and offering of its Cash Back Visa® Debit Cards, Reloadable Prepaid Visa® Cards, Load & Go Prepaid Visa® Cards, and Reloadable Prepaid Mastercard® Cards. Western Express's complaint alleges that these Green Dot products infringe Western Express's patent No. 8,498,932 (the "'932 Patent").

Western Express explains that the '932 Patent is, "most simply stated," directed to a process for "providing a unique numbered account at a bank to a retail customer and purchaser of a money card from the retailer." Put another way, the '932 Patent envisions a method of transferring money through a bankcard. The card is linked to a trust account at a bank, which enables the card's purchaser to add money to the account and thus to the card in excess of the amount that was pre-loaded on the card. The card also may be turned into a "reloadable money card," credit card, or debit card.[1] The card can be

---

[1] Western Express also alleges that the card could become a "direct deposit account," "card for wages earned from an

2

purchased at a store for use at any retail location by the purchaser or the recipient of the purchaser's gift. To activate such a change to the card, the purchaser must provide personal information through an ATM, telephone, or the internet. Western Express explains that the card imagined by the '932 Patent is "particularly useful for those who work for cash, those with initial funds but no credit history, those referred to as 'the unbankable,' used by children away from home, [and] holders with relatives in foreign countries."

As alleged by Western Express, Green Dot is "a provider of prepaid . . . debit money cards" that "are linked to the Green Dot Bank." These cards can be either "immediately used by the [customer] for the purchase of goods and services" or can be "altered or activated . . . to allow an otherwise dormant function of the money card to become 'active'" upon the customer's authorization through "telephone, an ATM, or the internet." Western Express does not allege the specific "dormant function" that lies within a Green Dot card, but does contend that it "is not merely the withdrawal of funds from an account."

---

employer," or an "ATM withdrawal card." Western Express does not explain how these differ from a "reloadable money card" or "debit card."

**The '932 Patent**

The '932 Patent, entitled "Card Based Transfer Account," was issued by the United States Patent and Trademark Office (the "PTO") on July 30, 2013. It comprises three independent method claims and thirty dependent claims. Claim 1 of the '932 Patent claims, in full:

> A method of funds transfer comprising the steps of:
>
> a. distributing at least one of a plurality of money account cards having specified capabilities to a retailer, each money account card having information associated with a predetermined account with one or more financial institutions, the retailer distributing the money account card to a purchaser thereof;
>
> b. receiving funds for allocation to the predetermined account, said funds being received from the purchaser of said money account card from the retailer;
>
> c. distributing at least a portion of the funds received into said predetermined account to a holder of the at least [sic] one money account card; and
>
> d. permitting the customer to furnish personal information of the holder other than a PIN, by communicating with the holder through an ATM, Internet connection or telephone call, and in response, activating or altering a previously dormant capability of the at least [sic] one money account card apart from withdrawal of funds.

The other two independent claims of the '932 Patent, Claims 17 and 29, do not add significantly to Claim 1. While Claim 1 describes the steps that the distributor of the card would take to make the cards available to customers, Claim 17 describes the

steps the customers would take to acquire such cards. In full, Claim 17 recites:

> A method of transfer comprising:
>
> a. purchasing at least one money account card having specified capabilities from a retailer;
>
> b. on or after the purchase of the money account card, depositing funds into a predetermined account associated with the money account card;
>
> c. distributing the money account card to a holder, and
>
> d. requiring personal information of the holder other than a PIN, by communicating with the holder through an ATM, Internet connection or telephone call, and in response, activating a previously dormant capability of the money account card apart from withdrawal of funds.

Claim 29 differs from Claim 1 only in that it adds the steps of opening an account at a financial institution and activating the money account card in response to receipt of funds. Claim 29 also includes an alternative step, whereby a card purchaser provides personal information to trigger receipt of "a replacement money card," rather than unlock dormant features in an existing card. Claim 29 provides in full:

> A method of funds transfer comprising the steps of:
>
> a. opening at least one account with at least one financial institution;
>
> b. providing a plurality of money account cards having specified capabilities, at least a given money account card being associated with the account;
>
> c. distributing the money account cards to retailers for retail sales to purchasers;

    d. receiving funds from a purchaser of the given money account card after the retail sale of the card;

    e. activating the account in response to the receipt of funds from the purchaser;

    f. distributing at least a portion of the funds to a holder of the given money account card; and

    g. obtaining personal information of the holder other than a PIN, by communicating with the holder through an ATM, Internet connection or telephone call, and in response, providing the holder with a replacement money card having a capability that is not provided by the given money account card.

Western Express also asserts that Green Dot's products infringe ten of the dependent claims of the '932 Patent. These are Claims 2, 12, 16, 23-25, 28, 30, 31, and 33.

On July 22, 2019, Green Dot moved to dismiss Western Express's claim for patent infringement on the grounds that the complaint fails to plead facts sufficient to state a plausible claim of infringement and that the '932 Patent is invalid because it is directed to patent-ineligible subject matter. Western Express was given an opportunity to amend in response to this motion and advised that it was "unlikely" that it would have a further opportunity to amend. Western Express chose not to amend its complaint and filed an opposition to the motion to dismiss. That motion became fully submitted on August 23, 2019.

## DISCUSSION

### I. Sufficiency of the Pleadings

To state a claim for relief that is plausible on its face,

the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Adia v. Grandeur Mgmt., Inc., 933 F.3d 89, 92 (2d Cir. 2019) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the ground upon which it rests." Id. (citation omitted). Still, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Elias v. Rolling Stones LLC, 872 F.3d 97, 104 (2d Cir. 2017) (citation omitted).

**A. Direct Infringement**

Green Dot seeks dismissal of the direct infringement claim on the ground that the plaintiff has not alleged that Green Dot has performed each of the necessary steps asserted in each of the independent claims of the '932 Patent.

"A method patent claims a number of steps," and a "patent is not infringed unless all the steps are carried out." Limelight Networks, Inc. v. Akamai Techs., Inc., 572 U.S. 915, 921 (2014). That is because a "patent covers only the totality of the elements in the claim and . . . no element, separately viewed, is within the grant." Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 344 (1961).

7

In a method claim where "no single actor performs all steps, . . . direct infringement only occurs if the acts of one are attributable to the other such that a single entity is responsible for the infringement." Eli Lilly and Co. v. Teva Parenteral Meds., Inc., 845 F.3d 1357, 1364 (Fed. Cir. 2017) (citation omitted); see also Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1351 (Fed. Cir. 2018). In such cases, a plaintiff must plead facts "sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." Lyda v. CBS Corp., 838 F.3d 1331, 1339 (Fed. Cir. 2016) (citation omitted); see also Nalco, 883 F.3d at 1351-52; Travel Sentry, Inc. v. Tropp, 877 F.3d 1370, 1378 (Fed. Cir. 2017); Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1023 (Fed. Cir. 2015).

Western Express has not sufficiently pleaded that Green Dot directed or controlled the other entities whose activity is required to perform the method contemplated by its method claims. The complaint does not allege that Green Dot directed or controlled the purchasers, retailers, or financial institutions referenced in the elements of its methods claims, nor does it provide sufficient factual allegations to allow this

reasonable inference.  In its opposition brief, Western Express neither acknowledges the direction or control test nor argues that Green Dot directs or controls any other entity whose involvement is essential for the claims' steps.  Accordingly, the direct infringement claim is dismissed.

### B. Induced and Contributory Infringement

Green Dot also moves to dismiss the induced and contributory infringement claims as wholly conclusory.  To assert a claim of indirect infringement, a plaintiff must allege facts "sufficient to allow an inference that at least one direct infringer exists."  In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1336 (Fed. Cir. 2012).  "It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement."  Nalco, 883 F.3d at 1355 (citation omitted).

As discussed, Western Express has failed to plausibly allege that Green Dot has committed direct patent infringement.  Western Express also has not pleaded sufficient factual allegations to permit the inference that any other entity that it references -- retailers, financial institutions, or card purchasers -- has committed direct infringement.  The complaint is also virtually silent on the relationships among any of the entities mentioned in the claims.  It therefore does not contain sufficient factual allegations to permit the inference that any

9

entity directs or controls the others such that a claim of direct infringement could be established.  Western Express therefore fails to sufficiently plead induced or contributory infringement.

The arguments Western Express present in opposition to this motion do not address these deficiencies and do not suggest that Western Express could cure the defects in its pleadings.  Instead, Western Express contends that it has stated a claim for induced and contributory infringement because the cards are "not staple articles."  Western Express is silent on why this characteristic matters.  It does not.  Thus, Western Express has not adequately pleaded that Green Dot has committed induced or contributory infringement.

## II. **Patent Ineligible Subject Matter**

Green Dot also moves, in the alternative, to dismiss the action on the ground that the '932 Patent is directed to patent-ineligible subject matter under Section 101 of the Patent Act.  It is correct.

Section 101 defines the subject matter eligible for patent protection.  It provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

10

35 U.S.C. § 101. A patent is presumed valid by statute, see id. § 282, and the party challenging the validity of a patent bears the burden of proving invalidity by clear and convincing evidence. Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1359 (Fed. Cir. 2007).

"Patent eligibility under § 101 is a question of law that may contain underlying issues of fact."[2] Solutran, Inc. v. Elavon, Inc., 931 F.3d 1161, 1165 (Fed. Cir. 2019). "The Supreme Court has held that certain categories of subject matter, including abstract ideas, are not eligible for patent protection under § 101." Id. at 1166. "The 'abstract ideas' category embodies the longstanding rule that an idea of itself is not patentable." Id. (citation omitted).

"To determine whether claimed subject matter is patent-eligible," courts apply "the two-step framework" explained by the Supreme Court in Alice Corp. Pty. Ltd. V. CLS Bank Int'l, 573 U.S. 208 (2014). Solutran, 931 F.3d at 1166. First, courts "determine whether the claims at issue are directed to a patent-eligible concept such as an abstract idea." Id. (citation

---

[2] "[E]valuation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1374 (Fed. Cir. 2016). Where there is "no claim construction dispute relevant to the eligibility issue," claim construction need not precede a § 101 analysis. Id. Green Dot has assumed Western Express's construction of the terms of the '932 Patent for purposes of resolving this motion.

11

omitted). "Second, if so, [courts] examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." Id. (citation omitted).

At Alice step one, courts consider "whether the claims focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." Smart Sys. Innovations, LLC v. Chi. Transit Auth., 873 F.3d 1364, 1371 (Fed. Cir. 2017) (citation omitted). At Alice step two, in considering whether an "inventive concept" has transformed an abstract idea into a patent-eligible application, courts require "more than simply stating the abstract idea while adding the words 'apply it.'" Alice, 573 U.S. at 221 (citation omitted). "Simply appending conventional steps specified at a high level of generality," are "not enough to supply an inventive concept." Id. at 222 (citation omitted).

**A. Claim 1**

Claim 1 is broadly directed to a "method of funds transfer." This concept of transferring money through a bankcard is similar to other "fundamental economic practice[s]" that the Supreme Court and Federal Circuit have held are abstract ideas. See e.g., Alice, 573 U.S. at 219 (citation omitted) (intermediated settlement); Bilski v. Kappos, 561 U.S.

12

593, 611 (2010) (risk hedging); OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1362 (Fed. Cir. 2015) (offer-based price optimization); Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014) (using advertising as an exchange or currency); Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (data collection). Comparing this claim to claims that previously have been found to be fundamental economic practices, Claim 1 is directed to the patent-ineligible abstract idea of transferring money through a bankcard.

Further, the claim does not describe how the cards technologically will be "transformed" nor does it specify what they will be transformed into. The '932 Patent relies on existing technologies and infrastructures that are inherent to the industries of banking and retail.

Western Express argues that the '932 Patent is not directed to an abstract idea because the "[p]urchase, use[,] and transformation of the card cannot be done by mere thought." Western Express states that the card is a "physical device," and inputting personal information on the telephone, internet or through an ATM, to change the functionality of the card from a simple money card to a card linked to a bank account requires a "physical act." This argument is unpersuasive. "[T]he abstract idea exception does not turn solely on whether the claimed

invention comprises physical versus mental steps." Solutran, 931 F.3d at 1168 (citation omitted). In Smart Sys. Innovations, the Federal Circuit considered and rejected an argument alleging that an abstract idea of a mass transit system accessible through a physical bankcard was patent-eligible subject matter simply because the bankcard was a physical device that collected, stored, and recognized data. 873 F.3d at 1371-72.

Western Express also contends that the '932 Patent is not directed to an abstract idea because its claims "set forth a list of process steps" that "effect[] the 'transformation' of the physical money account card . . . into a different item with enhanced and different functional attributes." But, the "process steps" of Claim 1 do not explain how the money account card "transform[s]" into a different card with "enhanced" attributes. Rather, the fourth step simply states that a "dormant capability" of the card is "activat[ed] or alter[ed]," in response to the input of "personal information." The previous three steps also do not describe how this activation or alteration occurs. These steps simply provide that (1) cards are distributed to retailers, (2) retailers receive funds for the cards, and (3) funds are received by those holding the cards. Thus, the claim recites "the collection of financial data from third parties, the storing of that financial data, linking proffered credit cards to the financial data, and

14

allowing access . . . based on the financial data" to unspecified, altered features of traditional money cards. Smart Sys. Innovations, 873 F.3d at 1372. The Federal Circuit has made clear that claims that are directed to the collection, storage, and recognition of data are directed to an abstract idea. Id. at 1373.

Western Express also asserts that Green Dot has mischaracterized the '932 Patent in arguing that the patent utilizes "well-known techniques and components." These features, Western Express argues, are not the "core features" of the '932 Patent's claim. Although Western Express does not articulate what comprises these "core features," it is no matter. A court must "ascertain what the claims are 'directed to,' not the thrust, heart, or focus, of the invention." Id. The claim is directed to the receipt, storage, and distribution of money by, in, and through existing technologies like retail stores, banks, and ATMs, the internet or telephone. It is directed to an abstract idea.[3]

---

[3] Western Express argues that the '932 Patent does not preempt all money transferring in the section of its opposition brief that addresses inventive concept. Step 2 of Alice is not the appropriate place for a preemption analysis. After identifying an abstract idea of a claim, courts "proceed with a preemption analysis to determine whether additional substantive limitations narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." Accenture Global Servs., 728 F.3d at 1344-45 (citation omitted). No preemption analysis is required or suggested here.

15

Finally, Western Express contends that Claim 1 passes the machine-or-transformation test, which considers whether there has been a "[t]ransformation and reduction of an article to a different state or thing." Gottschalk v. Benson, 409 U.S. 63, 70 (1972) (citation omitted). Although the machine-or-transformation test can provide a "useful clue" in the second step of Alice, passing the test alone does not overcome the above-described failings under step two. Solutran, 931 F.3d at 1169 (citation omitted). In any event, Claim 1 fails the machine-or-transformation test. As discussed, it contemplates a cash card that assumes the features of a credit or debit card. The physical card itself, however, is not transformed. It merely reflects a change in the legal obligations and relationships among the card's purchaser, recipients, if any, of the purchaser's gift, and the financial institutions that maintain the account associated with the card. "[M]anipulations of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the [transformation] test because they are not physical objects or substances, and they are not representative of physical objects or substances." Ultramercial, Inc., 772 F.3d at 717 (citation omitted).

**B. The Remaining Claims**

Western Express does not make a separate argument as to the patent eligibility of Claims 17 and 29. In any event, these claims are substantially similar to Claim 1, and they suffer from the same deficiencies. While Claim 1 describes steps that the distributor of the "money account card" would take to make the cards available to customers, Claim 17 describes steps the customers would take to acquire such cards. Claim 29 differs from Claim 1 only in that it adds steps of opening an account at a financial institution and activating the money account card in response to receipt of funds. Claim 29 also includes an alternative step, whereby a card purchaser provides personal information to trigger receipt of "a replacement money card," rather than unlock dormant features in an existing card. These claims are patent ineligible for the same reasons as Claim 1.

The dependent claims asserted in Western Express's complaint do not add significant limitations to Claim 1. They are still directed to the abstract idea of transferring funds through the use of a bankcard. The dependent claims thus are patent-ineligible for the same reasons as Claim 1.

## CONCLUSION

Green Dot's July 22, 2019 motion to dismiss is granted.

17

The Clerk of Court shall enter judgment for the defendant and close the case.

Dated: New York, New York
October 2, 2019

                                              _____
                                                       DENISE COTE
                                           United States District Judge